IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL WHACK, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | NO. 06-4917 |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                                                                                                                       February 26, 2008

       Currently before the Court are Plaintiff Nathaniel Whack's Objections to the Report and Recommendation of Chief United States Magistrate Judge Thomas J. Rueter and the Response of Defendant, the Commissioner of Social Security. For the reasons set forth below, the Objections are sustained in part and overruled in part. The case shall be remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**I.   PROCEDURAL HISTORY**

       On July 29, 2004, forty-one year old Plaintiff Nathaniel Whack filed for Supplemental Security Income ("SSI"), pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 301, *et seq.*, alleging disability since March 1, 1995.[1] (R. 65-69.) The state agency denied his claim on November 18, 2004. (R. 58-62.) Following Plaintiff's timely request for

---

1.  This application constituted Plaintiff's fourth attempt to obtain SSI. The others, filed on August 7, 1995, October 31, 1996 and November 15, 2000, were all denied. (R. 13.)

review, an administrative hearing was held before Administrative Law Judge ("ALJ") Irving A. Pianin, who denied benefits in a decision dated June 19, 2006.  (Id. at 10-23, 63.)  The Appeals Council subsequently dismissed Plaintiff's request for review, and, on November 6, 2006, Plaintiff initiated a civil action in this Court.  ®. 9.)  The matter was referred to Chief Magistrate Judge Thomas J. Rueter for a Report and Recommendation ("R&R").  Judge Rueter filed an R&R on January 14, 2008, finding no error in the ALJ's analysis.

Plaintiff now raises four objections:  (1) the ALJ erred by rejecting the opinions of the two treating physicians without good reason or adequate explanation; (2) the ALJ erred by rejecting Plaintiff's hearing testimony without good reason or adequate explanation; (3) the ALJ erred by not providing an adequate explanation of his assessment of Plaintiff's mental residual functional capacity ("RFC") and (4) the ALJ erred by failing to include required findings relating to mental functioning in his hypothetical questioning of the vocational expert.  The Court addresses each of these objections individually.[2]

## II.  STANDARD OF REVIEW[3]

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of the issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, the court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. §

---

2.  The Court's analysis of Plaintiff's third objection regarding the ALJ's mental residual functional capacity assessment is subsumed in the discussion regarding the ALJ's rejection of the treating psychiatrist's report at Section III.A.2, *infra*.

3.  The medical history, ALJ's findings and legal framework for assessing a disability claim were properly summarized by the Magistrate Judge.  Accordingly, the Court incorporates them by reference into this opinion.

636(b)(1).  The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  See United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 2413 (1980).

The Court's review of findings of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision.  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 421 (3d Cir.1999).  As such, "[t]his Court is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999). "Substantial evidence does not mean a large or considerable amount of evidence but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999).

### III. DISCUSSION

#### A. Whether the ALJ Erred by Rejecting the Opinions of Two Treating Physicians

In his initial objection, Plaintiff contends that the ALJ improperly rejected the opinions of two treating physicians.  Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)).  A treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2).  "An ALJ may

reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429.  The factors to be considered in assigning the appropriate weight to a medical opinion include:  length of treating relationship and frequency of examination, nature and extent of treating relationship, supportability, consistency, specialization, and other relevant factors.  20 C.F.R. § 416.927(d).

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) (quotations omitted).  Further, when disregarding such an opinion, the ALJ must explain on the record his reasons for doing so.  Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).  It cannot be "for no reason or for the wrong reason."  Morales, 225 F.3d at 317 (internal quotation marks omitted).

1.  **Treating Internist**

Plaintiff initially objects to the ALJ's rejection of treating internist James Lewis's report dated March 24, 2006.  By way of a checklist assessment, Dr. Lewis opined that Plaintiff could sit, stand and walk less than two hours in an eight-hour work day, sit only thirty minutes at a time, walk only fifteen minutes at a time and rarely lift less than ten pounds.  ®. 279-82.)  The ALJ gave little weight to this report:

> The Administrative Law Judge finds no medically acceptable support for Dr. Lewis' opinion about the claimant's residual functional capacity.  There is nothing in the evidence that supports a finding that the claimant would be limited to sitting for less than two hours in a work-like situation.  Dr. Lewis' provided no

> rationale for his findings and his opinions, as shown on the
> assessment forms, are not entitled to any significant weight.

®. 20.) The Magistrate Judge agreed with this conclusion, acknowledging the absence of both objective testing to support Dr. Lewis's opinion and medical explanations by Dr. Lewis himself.

This Court concurs with the Magistrate Judge and finds that the ALJ's determination was supported by substantial evidence. First, the ALJ properly relied on the fact that Dr. Lewis's opinion was unexplained by and inconsistent with his own treatment notes and findings.[4] Although many of Dr. Lewis's notations repeatedly referenced Plaintiff's back pain as a symptom, the doctor only occasionally characterized it as severe and never discussed any resulting range of motion or postural problems. Indeed, a substantial number of the treatment notes failed to even cursorily mention back problems. ®. 131-35, 295, 298-303.) Moreover, despite the claim that this allegedly disabling impairment existed since 1995, Dr. Lewis did not refer Plaintiff to a specialist until June 2005, well after the filing and initial denial of the current application. As neither the progress notes nor the treatment protocol suggested a condition as severe as indicated in the assessment form, the ALJ was entitled to accord less weight to Dr. Lewis's conclusions. See Plummer, 186 F.3d at 430 ("ALJ was entitled to place greater reliance on the doctor's full medical opinion than his cursory answers to interrogatories.")

Second, the ALJ recognized that objective medical testing did not support Dr. Lewis's findings of extreme limitation.[5] A December 3, 2002 MRI was normal, except for degenerative disc disease at L5-S1, with a small central nonstenotic nuclear herniation. ®. 143.)

---

4. "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3).

5. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3).

The next MRI, on February 4, 2005, again showed the central disc protrusion at L5-S1 and some intervertebral disc space narrowing with disc desiccation at L5-S1, but no stenosis at that level and no abnormalities at any other level. ®. 175-76.) Finally, a February 8, 2005 EMG was a "mildly abnormal study" showing some mild sensory/motor peripheral polyneuropathy. ®. 177.) As acknowledged by the ALJ, while such findings could clearly result in some of Plaintiff's claimed symptoms, nothing suggested a condition that would cause the limitations described by Dr. Lewis. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (holding that an unsupported diagnosis is not entitled to significant weight).

Third, the ALJ observed that Dr. Lewis's report was inconsistent with the other medical evaluations of record.[6] Dr. Harry Schwartz performed two psychiatric evaluations of Plaintiff in 2005, finding that he was in no apparent distress, maintained a stable gait and had bilateral lower extremity strength of 4+/5, dorsiflexion strength of 4/5 and upper extremity strength of 4+/5. ®. 267-70.) Consultative examiner Dr. Rothkopf similarly noted that his physical examination of Plaintiff's lumbar spine was "very benign." ®. 152-56.) He deemed Plaintiff capable of occasionally lifting and carrying up to twenty pounds, standing and walking between two and six hours in an eight hour workday, sitting without limitation and occasionally performing postural activities.[7] ®. 157-58.) Finally, state reviewing physician Oliver Finch

---

6.  "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(d)(4).

7.  Prevailing case law dictates that, when faced with conflicting reports between a treating and a consulting physician, an ALJ should generally defer to the findings of the treating physician rather than to a physician who has examined the claimant as a consultant or not at all. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); see also 20 C.F.R. § 416.927(d)(2). Nonetheless, "[t]he opinions of non-examining treating physicians may override a treating source's opinions provided that the former are supported by evidence in the record." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) (citing Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)), aff'd, 85 F.3d 611 (3d Cir. 1996).

determined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, sit for six hours in an eight-hour workday, stand/walk for six hours in an eight hour workday and had no postural, manipulative, visual or communicative limitations. ®. 144-51.)

Lastly, and perhaps most importantly, Plaintiff's own activities belied the multiple restrictions imposed by Dr. Lewis. Contrary to Dr. Lewis's finding that Plaintiff could stand and walk less than two hours in an eight-hour work day and could walk only fifteen minutes at a time, Plaintiff actually walked approximately twenty blocks between his home and his physical therapy facility on a regular basis from June to August of 2005. ®. 15, 181-84.) Further, in his Daily Activities Questionnaire, Plaintiff conceded that he cut the grass, cleaned his house, swept and did light touch-up painting. ® 92-93.) Although "sporadic or transitory activity does not disprove disability," Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981), Plaintiff's regular activities suggested a greater physical capability than indicated by Dr. Lewis.

In short, as correctly found by the Magistrate Judge, the ALJ provided a clear and well-reasoned basis for not fully crediting Dr. Lewis's report. The ALJ did not deem Plaintiff unlimited by his condition; rather, he determined, based on substantial evidence, that Plaintiff's impairment did not rise to the level of severity indicated by Dr. Lewis. As such, the Court declines to remand or reverse on this basis.

  **2.**   **Treating Psychiatrist**

Plaintiff next contends that the ALJ's treatment of the September 20, 2005, report issued by his treating psychiatrist was not based on substantial evidence. Specifically, the psychiatrist, in conjunction with Plaintiff's therapist, completed an assessment opining that Plaintiff had marked limitations in understanding, remembering and carrying out complex and

detailed instructions; behaving in an emotionally stable manner; relating predictably in social situations; and demonstrating reliability, as well as moderate limitations on understanding, remembering and carrying out simple instructions and maintaining personal appearance. ®. 197-200.) The report went on to find that employment demands may cause Plaintiff's symptoms of anxiety to increase, that Plaintiff had difficulty concentrating and focusing and that socialization was limited and unpredictable. ®. 199.) The ALJ declined to adopt this assessment, reasoning as follows:

> In this case, the Administrative Law Judge does not accept the opinions of the psychiatrist and therapist, as shown on the assessment form. During the intake process, the claimant's symptoms were found to be moderate and he was reported to have normal to fair insight and judgment, normal thought processes, and intact memory and concentration. Neither professional noted that the claimant had difficulty with receptive or expressive speech. In fact, neither professional found initially that the claimant had any serious symptoms and subsequent progress notes show that neither the psychiatrist nor the therapist thought that the claimant's symptoms had become more serious.

®. 18.) Considering Plaintiff's challenge to this analysis, the Magistrate Judge affirmed the ALJ's ruling, concluding that the ALJ properly relied on the description of Plaintiff's symptoms and mental status during his initial intake process, the absence of any severe symptoms mentioned in any progress notes, the consistent global assessment of functioning ("GAF") scores of 55 [8] and Plaintiff's activities of daily living.

---

8. A global assessment of functioning ("GAF") score of 51-60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) [hereinafter "DSM-IV"].

Notwithstanding Plaintiff's current claim that the ALJ substituted his lay opinion for expert opinion, this Court finds no error in either the ALJ's or the Magistrate Judge's analysis.  First, as correctly noted by the ALJ, the serious limitations imposed in the psychiatrist's assessment stood in stark contrast to the comprehensive biopsychosocial evaluation performed during Plaintiff's intake at WES Health Centers eight months earlier.  On mental status examination, Plaintiff was found to be frustrated, have a flat affect and mood, and slowed speech and language, but otherwise was cooperative, with normal cognition, motor activity, perception, thought process, insight and judgment.  ®. 238.)  While his symptoms were consistent with generalized anxiety disorder, he was given a current GAF score of 55 and a highest past year GAF of 60, both of which reflected only moderate symptoms.  ®. 239.)

Moreover, both the Magistrate Judge and the ALJ noted that the serious limitations indicated in the reports were not reflected anywhere in the progress notes from WES Health Center.  The most severe problems detailed in the progress notes included statements that Plaintiff did not "seem himself" on one occasion ®. 222), that he had, at one time, a "blunted affect" and worried about his responsibilities and appointments ®. 221), that he was lonely ®. 208, 218), that he had occasional bouts of high anxiety and felt overwhelmed ®. 201, 211, 215-16), that he had issues with his neighbors being noisy ®. 207), and that he occasionally had trouble sleeping when worried.  ®. 205.)  The majority of the treatment notes, however, revealed that Plaintiff had a bright affect, slept well, was "doing well," coped with life's stressors, seemed stable and coherent and had no new or major problems.  ®. 201-04, 206, 209, 212-14, 217-18, 220, 223-28.)  Indeed, as of March 2005, Plaintiff reported relaxing around people, participating in activities with friends and looking into going back to school.  ®. 218-20.)  In April 2005,

Plaintiff stated that he only took his medicine when needed and had not been taking it recently. ®. 216.) By August of 2005, just prior to the assessment in question, Plaintiff displayed a bright affect and reported doing well with no major problems or symptoms of anxiety. ®. 203.) Nothing in the treatment notes suggested a significant deterioration in his condition from his moderate symptoms in the February 2005 intake evaluation to the marked symptoms listed in the September 2005 Assessment of Mental Ability to Do Work-Related Activities.

In addition, the ALJ found that Plaintiff's professed abilities and activities of daily living were inconsistent with the treating psychiatrist's report. Contrary to the assessed marked limitation in functioning independently, Plaintiff reported that he cooked, cleaned, cut the lawn and did small loads of laundry. ®. 44-46, 92-93.) Further, in contrast to the marked limitations in social functioning, Plaintiff testified that he had few problems getting along with family members, had friends, went to church two to three times per month and liked to spend time with people. ®. 49-50, 95, 218, 236.) Finally, with respect to Plaintiff's concentration, he indicated that he was able to read books and engage in sewing without difficulty. ®. 95, 236.)

Further, the ALJ considered the opinion of a non-treating medical source, John Chiampi, Ph.D. ®. 21.) Dr. Chiampi determined that Plaintiff had a non-severe anxiety related disorder, which caused no more than mild limitations in activities of daily living, social functioning and concentration, persistence and pace. ®. 161-174.) Although the ALJ ultimately found that Plaintiff's mental impairment was more severe than described by Dr. Chiampi,[9] he

---

9. By way of a lengthy discussion, Plaintiff argues that Dr. Chiampi's assessment was not entitled to any weight since the doctor did not have the opportunity to review any of Plaintiff's mental health treatment records from WES Health Centers. Plaintiff fails to note, however, that the ALJ recognized these deficiencies in Dr. Chiampi's report by declining to accept the doctor's conclusion that Plaintiff had a non-severe mental impairment.

was nonetheless entitled to rely on that medical opinion as a basis for discounting the treating psychiatrist's report.

Finally, the ALJ did not wholly reject the assessment at issue. Indeed, he agreed that Plaintiff suffered from a severe mental impairment of anxiety with depression which caused significant vocationally relevant limitations. (R. 14.) Citing directly to the progress notes, he acknowledged that Plaintiff had periods of anxiety and determined that Plaintiff suffered related limitations, albeit less severe than described in the assessment form. (R. 17, 19.) He subsequently accommodated those limitations by restricting Plaintiff to simple, routine, one-to two-step tasks that required only occasional contact with co-workers and the public.

In sum, the ALJ did not improperly substitute his lay opinion for that of a medical expert. Instead he found that the psychiatrist's opinion did not have adequate foundation in the record – a determination well within the province of the ALJ.[10] See Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992) (noting that the ALJ is obligated to weigh the medical evidence and make a choice between conflicting medical evidence). In doing so, he cited to substantial

---

10. Plaintiff takes issue with the ALJ's failure to discuss the conclusions in Dr. Lewis's assessment that Plaintiff had emotional difficulties and poor people skills, and would not be able to tolerate even low stress jobs. As noted by the Magistrate Judge, however, the ALJ need not reference every piece of evidence in the record, particularly a mental assessment from a non-specialist primary care physician. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001); Hur v. Barnhart, 94 Fed Appx. 130, 133 (3d Cir. 2004). More importantly, as discussed in detail by the ALJ, Dr. Lewis's report as a whole was not supported by his own treatment notes. Despite Dr. Lewis's alleged familiarity with Plaintiff's mental condition, he never referred Plaintiff for any mental health treatment or expressed concern over his mental impairment. Indeed, Plaintiff only entered treatment at the behest of his attorney. (R. 233.)

Plaintiff also contests the ALJ's reliance on Plaintiff's statement that he sought treatment only to obtain disability. The Third Circuit has warned that "[t]he fact that a 'claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day' is not a substantial basis to reject that an impairment existed." Beasich v. Comm'r of Social Security, 66 Fed Appx. 419, 429 (3d Cir. 2003) (quoting Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). In this case, however, the ALJ did not deny that Plaintiff suffered a mental impairment. Rather, he imposed multiple limitations in the RFC assessment as a result of that impairment, but recognized that Plaintiff's confessed ulterior motive for seeking treatment detracted from his statements as to the severity of his condition.

evidence in support of his conclusion, thereby precluding this Court from substituting our own findings.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (holding that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision).

### B.   Whether the ALJ Erred by Rejecting Plaintiff's Hearing Testimony

In his second objection, Plaintiff asserts that the ALJ did not properly evaluate his credibility.  He specifically contends that ALJ relied on his own lay interpretation of raw medical data to disregard his testimony.  After considering Plaintiff's argument, the R&R concluded that this claim was meritless:

> In the case at bar, the ALJ noted that plaintiff's allegations regarding his "impairments and the limitations they impose are not supported by the evidence and are therefore not fully credible."  ®. 20.)  As set forth above, the ALJ explained in detail his determinations that plaintiff's physical and mental limitations were not disabling.  With respect to plaintiff's physical condition, the ALJ discussed medical tests and plaintiff's treatment history and ultimately determinated that plaintiff's assertions regarding his physical limitations were not supported by the record.  The ALJ further explained that plaintiff's mental symptoms had never been more than moderate and that plaintiff acknowledged seeking mental health treatment only to support his claim of disability.  ®. 14-22.)  Accordingly, this court finds that this claim is without merit.

(R&R 15 (footnotes omitted).)

Plaintiff's objection identifies no clear error in this analysis.  An ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them. Green v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir. 1984). In situations where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067-68 (internal quotations omitted). The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Weber v. Massanari, 156 F. Supp.2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).

As noted in the R&R, the ALJ properly cited to the absence of supporting medical tests, the lack of treatment for these allegedly disabling conditions and Plaintiff's own activities of daily living as support for his credibility analysis.[11] Such factors are explicitly enumerated as evidence to be considered under 20 C.F.R. § 416.929(c)(3). In addition, the ALJ's decision contained "specific reasons for the finding on credibility, supported by the evidence in the case record" and was "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Schwartz v. Halter, 134 F. Supp.2d 640, 654 (E.D. Pa. 2001) (quoting Social Security Ruling 96-7p, supra; Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 433 (3d Cir. 1999)). Finding no merit to this contention, the Court declines to reverse or remand on this basis.

### C. Whether the Hypothetical Posed to the Vocational Expert Was Proper

---

11. Interestingly, in addressing a different objection, Plaintiff's brief argues that Plaintiff was not a reliable source about the state of his mental health. (Pl.'s Objections 9.)

In his last objection, Plaintiff argues that the hypothetical posed to the vocational expert did not incorporate all of his limitations, in particular his moderate limitation on concentration, persistence and pace. As a result, he claims that the vocational expert did not account for such limitations when opining on Plaintiff's work related abilities. The Magistrate Judge determined that the hypothetical properly encompassed Plaintiff's limitations which were supported by the evidence of record. In light of controlling Third Circuit jurisprudence in this area, however, this Court must respectfully disagree.

In order for a vocational expert's answer to a hypothetical question to be considered substantial evidence, the question must reflect all of a claimant's impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). As emphasized by the Third Circuit,

> While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.

Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The law does "not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant," but does require that the hypothetical "accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (quotations omitted) (emphasis in original). Where the record contains medically undisputed evidence of a specific impairment not included in the hypothetical, the expert's response is not considered substantial evidence. Podedworny, 745 F.2d at 218.

In Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004), the Third Circuit expressly held that a hypothetical question limiting a claimant to simple, repetitive, one-to two-step tasks is not sufficient to encompass a claimant's impairments where the ALJ has found that he or she "often" suffered from deficiencies in concentration, persistence and pace.[12] Id. at 554. The Third Circuit reasoned that "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." Id. Other decisions from this Court, which Defendant has neither addressed nor distinguished, have similarly refused to uphold an ALJ's ruling where a claimant either "often" had deficiencies or had "moderate" deficiencies in concentration, persistence or pace, and where the ALJ only limited the claimant to simple and routine and/or low stress work. See, e.g., Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) (where medical evidence showed that plaintiff suffered stress in a job environment, limitation to simple tasks, without individualized inquiry, was not supported by substantial evidence); Barry v. Astrue, No. 05-CV-1825, 2007 WL 2022085, at *4 (E.D. Pa. July 9, 2007) (finding that hypothetical restriction to simple, low stress, one-to two-step tasks, involving limited contact with the public and co-workers did not adequately encompass credibly established moderate limitations on concentration, persistence and pace); Steininger v. Barnhart, No. 04-CV-5383, 2005 WL 2077375, *3-4 (E.D. Pa. April 24, 2005) (limitation to "simple repetitive tasks" and "only occasional contact with the public and coworkers" does not sufficiently incorporate the

---

[12] See Colon v. Barnhart, 424 F. Supp.2d 805, 811 (E.D. Pa. 2006) ("A finding of 'often' under the old scale therefore roughly equates to a 'moderate' deficiency."); Dynko v. Barnhart, Civ. A. No. 03-3222, 2004 WL 2612260, at *5 n. 34 (E.D. Pa. Nov. 16, 2004) (holding that "'often' and 'moderate' fall on the same point on a five-point continuum, and therefore can be considered equivalent findings").

ALJ's finding that plaintiff had "a moderate degree of limitation in the concentration, persistence and pace area of functioning.")

In the case at bar, the ALJ expressly found that Plaintiff had a moderate limitation in concentration, persistence and pace, as follows:

> The third area of the Part B criteria, concentration, persistence and pace, refers to the ability to sustain focused attention sufficiently long enough to permit timely completion of tasks commonly associated with a work setting. The psychologist and the therapist thought that the claimant was limited in this area, but he indicated that he liked to read books and that he had no problems with concentrating . . . . The Administrative Law Judge finds that the claimant has a moderate limitation in this area.

®. 19.) Nonetheless, when constructing a hypothetical for the vocational expert, the ALJ only limited Plaintiff to work requiring no more than occasional contact with co-workers and/or the public and involving only simple, routine, one-to two-step tasks. ®. 50.) Our jurisprudence makes clear that such a hypothetical does not sufficiently incorporate plaintiff's medically established limitations. Accordingly, the VE's answer cannot serve as substantial evidence.

The Court recognizes that the ALJ may have a valid explanation for this omission from the ALJ's hypothetical. For example, he may have determined that although Plaintiff had a moderate limitation in concentration, persistence and pace for purposes of the listings analysis, it would not have an effect on his vocational ability to perform simple, routine, one-to two-step tasks. The ALJ, however, provided no such explanation for his omission.[13] Absent further

---

13. To the extent Defendant would argue that the ALJ's finding of a moderate limitation in concentration, persistence and pace was made in the context of his step three analysis and, thus, had no bearing on his steps four and five determination, the Court notes that this precise argument was deemed meritless in Ramirez. Specifically, the Third Circuit rejected any suggestion that an ALJ's determinations at steps two and three play no role in the formulation of the RFC assessment for purposes of steps four and five. Ramirez, 372 F.3d at 555.

vocational expert testimony tailored to Plaintiff's precise residual functional capacity, the Court cannot speculate as to the outcome.[14]

## IV.  CONCLUSION

The question now remains as to the appropriate course of action to be taken by this Court.  "A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing."  Podedworny, 745 F.2d at 221.  "The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  Id. at 221-22.  Reversal is necessary in these cases, in order to avoid delay in receipt of benefits caused by unnecessary administrative proceedings. Id. at 222.

The record in this case does not warrant reversal since the substantial evidence of record as a whole far from indicates that Plaintiff is disabled.  On the other hand, the ALJ's failure to include all of Plaintiff's limitations in the hypothetical to the vocational expert precludes this Court from affirming the decision as written.  Bound by our limited standard of review and proscriptions on our fact-finding authority, the Court is constrained to remand the matter for further consideration consistent with this opinion.

---

14.   Notably, the record suggests that a limitation on concentration, persistence and pace would, in fact, impact Plaintiff's employability.  At the administrative hearing, Plaintiff's attorney asked "[i]f an individual has 'difficulty concentrating, focusing, socialization is limited and unpredictable', does that tend to lend itself to somebody who would have difficulty sustaining any competitive employment?"  ®. 54.)  The vocational expert responded, "Yes." (Id.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHANIEL WHACK, | : |
| | :   CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MICHAEL J. ASTRUE, | :   NO. 06-4917 |
| COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
| | : |
| Defendant. | : |

**ORDER**

**AND NOW**, this *26th* day of *February*, 2008, upon consideration of Plaintiff's Request for Review (Docket No. 12), Defendant's Response to Plaintiff's Request for Review (Docket No. 13), Plaintiff's Reply Brief (Docket No. 15), the Report and Recommendation of Chief United States Magistrate Thomas J. Rueter (Docket No. 16), Plaintiff's Objections thereto (Docket No. 17) and Defendant's Response to Plaintiff's Objections (Docket No. 18), and upon careful review of the entire record, it is hereby **ORDERED**, as follows:

1. Plaintiff's Objections to the Report and Recommendation are **SUSTAINED IN PART** and **OVERRULED IN PART**;

2. Plaintiff's Request for Review is **GRANTED** insofar as Plaintiff requests that the matter be vacated and remanded for further vocational expert testimony. Plaintiff's Request for Review is **DENIED** in all other respects;

3. The matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the discussion set forth in section III.C of the Court's Memorandum accompanying this Order; and

4. This case shall be **CLOSED** for statistical purposes.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER,        S.J.